IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| William Mercil, | ) |
| | ) Case No. 17-cv-8586 |
| Plaintiff, | ) |
| | ) COMPLAINT FOR VIOLATION OF |
| | ) AMERICANS WITH DISABILITIES |
| v. | ) ACT AND STATE SUPPLEMENTAL |
| | ) CLAIMS |
| New Albertson's, Inc., DBA Jewel Osco, | ) |
| | ) |
| Defendant. | ) JURY DEMANDED |

**COMPLAINT**

Now comes Plaintiff William Mercil (hereinafter "Mercil"), by and through counsel, and, against Defendant New Albertson's, Inc., DBA Jewel-Osco (hereinafter "Jewel"), complains as follows:

**Jurisdiction, Venue, and Parties**

1. This case arises under the Americans with Disabilities Act of 1990 (hereinafter the "ADA"), as amended, codified at 42 U.S.C. § 12101, *et seq.* Accordingly, this court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

2. Mercil also brings state law claims under the Illinois Human Rights Act (hereinafter the "IHRA"), codified at 775 ILCS 5/1-101, *et seq.*

3. This court has supplemental jurisdiction over Mercil's state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the ADA claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

4. Mercil has been employed as a truck driver by Jewel—out of its Melrose Park, Illinois, warehouse location (1955 West North Avenue)—since November of 1990.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and §(b)(2) because Jewel resides in and does business within this District and the acts and omissions that Mercil complains of occurred within this District (at the Melrose Park, Illinois, warehouse location).

### Facts Relevant to All Counts

6. Throughout Mercil's career with Jewel, he has suffered several work-related injuries affecting his arm/hand/shoulder and his hip/leg.

7. These injuries have caused him to be unable to work for various periods of time since November of 1990 and have required several surgeries.

8. Despite being unable to work during certain periods of time, Mercil has remained an employee of Jewel since November of 1990 (although Jewel has attempted to terminate him on several occasions during periods in which he was unable to work).

9. Due to his work-related arm/hand/shoulder injuries, Mercil has permanent work restrictions; these have been in place since about 2006.

10. Regardless, for months immediately prior to March of 2010, Mercil was able to (and did) work with these permanent restrictions in place, after Jewel approved accommodations for them.

11. But, due to his work-related injuries and surgeries, Mercil was unable to work from March of 2010 to December 22, 2014. He remained a Jewel employee during this time.

12. On December 22, 2014, Mercil's doctor released him back to work, although he recommended that Mercil be placed on a 120-day trial period to see whether he was able to tolerate operating a manual transmission.

13. Jewel was notified of Mercil's work release on or about December 23, 2014.

14. Mercil was ready, willing, and able to return to work immediately as of December 23, 2014.

2

15. But, despite receiving the release, Jewel did not allow Mercil to return to work.

16. On or about January 20, 2015, Mercil, through one of his attorneys, provided Jewel with the work release again, explained that Mercil was able and willing to return to work immediately, and asked when Mercil could report to work.

17. However, Jewel still did not allow Mercil to return to work.

18. On April 23, 2015, Mercil's doctor issued him another work release and reiterated that Mercil was able to return to work, although he reiterated his recommendation that Mercil be placed on a 120-day trial period to see whether he was able to tolerate operating a manual transmission.

19. Jewel received this re-issued release on or about April 23, 2015.

20. Despite receiving this release, Jewel still did not allow Mercil to return to work.

21. On or about May 29, 2015, Mercil, through one of his attorneys, provided Jewel with the April 23, 2015 release again, explained that Mercil was still able and willing to return to work immediately, and asked to be contacted immediately with a return-to-work date.

22. However, Jewel continued to refuse to allow Mercil to return to work.

23. As a result, Mercil was denied the ability to return to work, although willing and able to do so, from December 23, 2014 through about February 11, 2016.[1]

24. Mercil has since been released; he returned to work on or about November 6, 2017, with his permanent restrictions (which have been in place since before March of 2010) still in place.

**Count I: ADA Claims**

25. Mercil re-alleges paragraphs 1-24 as if fully alleged here.

26. As a result of his injuries and surgeries, at all relevant times, Mercil was a person with a disability, as that term is defined by the ADA.

---

[1] (when he was required to undergo another surgery, and was thus unable to work again)

27. His arm/hand/shoulder impairments have substantially limited (and still substantially limit) one or more of his major life activities, such as performing manual tasks (*e.g.* writing), lifting, and working.

28. Mercil's hip/leg impairments have also substantially limited one or more of his major life activities, such as lifting, carrying, driving, and working (although they did not substantially limit these activities from about December 22, 2014 to about February 11, 2016).

29. Jewel was aware of these impairments.

30. Irrespective of Mercil's actual disabilities, Jewel has regarded Mercil as a disabled individual throughout his career, including from about December 23, 2014 through about February 11, 2016.

31. On numerous occasions from about December 23, 2014 through about February 11, 2016, Mercil requested a reasonable accommodation—to return to work for a 120-day trial period (to see how he tolerated operating a manual transmission) with his permanent restrictions (resulting from his arm/hand/shoulder injuries) still in place.

32. From about December 23, 2014 through about February 11, Jewel continuously refused to allow Mercil to return to work.

33. Further, Jewel failed to engage in the interactive process from about December 23, 2014 through about February 11, 2016. For example, they requested irrelevant information from one of Mercil's attorneys and used pretextual reasons to deny him the ability to return to work.

34. Jewel violated the ADA in the following ways: it refused to allow Mercil to return to work because of his disabilities, as that term is defined in the ADA (whether actual, perceived, or record of); it denied him a reasonable accommodation (120-day trial period, with permanent restrictions still in place) and failed to engage in the required interactive process in good-faith; and it retaliated against him for engaging in one or more protected activities (taking time off due to

impairments, requesting and obtaining accommodations for his restrictions, filing a charge of discrimination in the past—based on acts and omissions not giving rise to his other claims herein, and/or being involved in a class-action claim filed by the EEOC against Jewel based on a leave of absence policy that violated the ADA).

35. Mercil has been harmed by Jewel's violations: he lost wages and benefits, lost earning power, and suffered emotional distress.

36. Mercil had to retain an attorney to vindicate the violation of his rights.

37. Jewel's conduct was in reckless disregard of Mercil's rights. Therefore, Mercil requests punitive damages to punish Jewel and to deter Jewel and other companies from engaging in similar discriminatory conduct in the future.

Wherefore, Plaintiff William Mercil requests that Defendant New Albertson's, Inc., DBA Jewel Osco, be found liable, that a judgment be entered against it, and that Plaintiff be awarded all remedies to which he is entitled under the law, including lost wages, salary, employment benefits, or other compensation; the present cash value of the time, earnings, salaries, and benefits reasonably certain to be lost in the future; compensatory damages (including for emotional distress); punitive damages; prejudgment interest; attorneys' fees; reasonable expert witness fees; costs of litigation; and any other relief deemed equitable and appropriate.

### Count II: IHRA Violations

38. Mercil re-alleges paragraphs 1-37 as if fully alleged here.

39. Jewel's actions and inactions, as described herein, also violated the IHRA.

Wherefore, Plaintiff William Mercil requests that Defendant New Albertson's, Inc., DBA Jewel Osco, be found liable, that a judgment be entered against it, and that Plaintiff be awarded all remedies to which he is entitled under the law, including: actual damages; backpay; front pay; fringe

benefits; prejudgment interest; attorneys' fees; expert witness fees; costs; and any other relief to make Plaintiff whole, including compensation for lost earning power.

## Jury Demand

40. Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: 11/28/2017

Respectfully submitted by:

s/Steven J. Molitor

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
smolitor@julieherreralaw.com
